IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THOMASELLOUS J.M. REDDING, | * |
| Plaintiff, | * |
| vs. | *   CASE NO. 5:06-CV-321 (CDL) |
| ROY CHESNUT, Officer with Macon Police Department; MIKE BURNS, Chief of Police, Macon Police Department; and C. JACK ELLIS, Mayor, City of Macon, Georgia, | *  *  * |
| Defendants. | * |

O R D E R

This action involves allegations that Defendant Chesnut (sued as "Chestnut"), a Macon police officer, used excessive force against Plaintiff during an incident on September 22, 2004. Plaintiff seeks to hold Defendants liable under 42 U.S.C. § 1983 ("§ 1983") for violating Plaintiff's Fourth Amendment rights to be free from unreasonable seizures and from the use of excessive force. Plaintiff, who is developmentally disabled, also contends that the September 22, 2004 incident gives rise to claims under Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 ("ADA").[1] Presently pending before the Court are the Motion for Summary Judgment of Defendants Burns and Ellis (Doc. 20) and the Motion for Summary Judgment of Defendant Chesnut (Doc. 21). As discussed below, the motions are granted.

---

[1] Plaintiff does not appear to assert any state law claims.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A central purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact. *See id.* at 323. To meet this burden, the movant may point the court to "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (internal quotation marks and citations omitted). In the alternative, Defendant may show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the summary judgment movant meets its burden, the burden shifts and the nonmoving party must produce evidence to show that there *is* a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must go beyond the pleadings," *id.,* and point the Court to "specific facts showing a genuine issue

for trial." Fed. R. Civ. P. 56(e)(2); *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party is not required to produce evidence in a form that would be admissible at trial, but it must point to some evidence to show a genuine issue of material fact.[2] *Id.* Such evidence may be in the form of affidavits, depositions, answers to interrogatories or admissions on file. *Celotex Corp.*, 477 U.S. at 324; *accord* Fed. R. Civ. P. 56(e).

The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in favor of the nonmoving party, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). It is not enough to have *some* alleged factual dispute; there must be a genuine issue of material fact to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. A fact is *material* if it is relevant or necessary to the outcome of the suit. *Anderson*, 477 U.S. at 248. A factual dispute is *genuine* if the evidence would allow a

---

[2] Plaintiff requested an "evidentiary hearing" on Defendants' Motions for Summary Judgment and attempts to "reserve[] the right to submit additional evidence in support of his opposition to the Motion[s for Summary Judgment]." (Pl.'s Br. in Opp'n to Def. Chesnut's Mot. for Summ. J. 14-15.) However, Plaintiff is required to produce evidence sufficient to create a genuine issue of material fact *in response* to Defendants' Motions. *See Celotex Corp.*, 477 U.S. at 324. While the Court recognizes that Plaintiff was not represented by counsel in this case until after the close of discovery, the Court notes that Plaintiff's counsel never sought to reopen discovery. Furthermore, Plaintiff has not shown by affidavit that he cannot present facts essential to justify his opposition to Defendants' motions, and he has not requested a continuance to enable him to obtain additional affidavits or take depositions. *See* Fed. R. Civ. P. 56(f).

3

reasonable jury to return a verdict for the nonmoving party—there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Anderson*, 477 U.S. at 248.

## FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the record reveals the following:

On September 22, 2004, Macon police received a citizen tip that three black males were dealing drugs behind the house at 1503 Wellworth Avenue in Macon, Georgia. Three Macon police officers, including Defendant Chesnut, responded to the scene and observed three black males in close proximity to each other near a fence. When the officers approached, one of the men took flight. Two of the officers pursued him, leaving Chesnut at the scene. Chesnut gave verbal commands for the two remaining individuals to stop and show their hands. One of the individuals, Plaintiff, had a bicycle and was outside of the fence enclosing the backyard. When the police arrived, Plaintiff began moving away from 1503 Wellworth Avenue.[3]

Chesnut ordered Plaintiff, who is mentally disabled, to stop. Plaintiff did not stop. Both sides agree that Chesnut drew his service revolver. Both sides agree that Chesnut knocked Plaintiff to

---

[3] According to Defendants, Plaintiff rode his bicycle away from the fence and toward Chesnut. While Plaintiff appears to suggest in his brief that Plaintiff was riding his bicycle (Pl.'s Br. in Opp'n to Def. Chesnut's Mot. for Summ. J. 3), Plaintiff asserts in his Statement of Material Facts that Plaintiff walked his bike slowly away from the scene (Pl.'s Statement of Material Facts ¶ 3).

4

the ground. According to Chesnut, because Plaintiff did not comply with Chesnut's verbal commands, Chesnut "took [his] opened palm left hand" and struck Plaintiff "on [the] right shoulder," knocking him onto the grass. (Attach. 1 to Chesnut Decl., Feb. 7, 2008 at 3, Chesnut Statement, Oct. 14, 2004 [hereinafter Chesnut Oct. 14 Statement].) According to Plaintiff, Chesnut ran up behind Plaintiff and struck Plaintiff on the back, pushing him into a stop sign. (J. Thomas Aff. ¶ 7, Mar. 17, 2008; K. Thomas Aff. ¶ 7, Mar. 17, 2008.) Chesnut then threw or tackled Plaintiff to the ground. It is undisputed that Chesnut repeatedly told Plaintiff to "freeze" and "stay down," and that Plaintiff tried to get up at least twice.[4] Chesnut pushed Plaintiff back down and used his foot to press on Plaintiff's foot and hold him down. (J. Thomas Aff. ¶ 7; K. Thomas Aff. ¶ 7.) Plaintiff does not appear to dispute that Chesnut did not realize that Plaintiff was developmentally disabled when he was trying to get Plaintiff to stop and stay down. While Chesnut was trying to restrain Plaintiff and giving him orders to "freeze" and "stay down," Jermaine Thomas, a neighbor, shouted to Chesnut that Plaintiff was "slow" and that Plaintiff did not understand what was happening. When Chesnut heard Mr. Thomas yell that Plaintiff was "slow" and did not understand what was happening, he let Plaintiff

---

[4] Plaintiff contends that he was "docile at all times during the incident" (Pl.'s Br. in Opp'n to Def. Chesnut's Mot. for Summ. J. 11), but he does not dispute that Plaintiff repeatedly tried to get up despite Chesnut's orders for him to stay down. (*E.g.*, J. Thomas Aff. ¶ 7.)

5

up.  Plaintiff left the scene and went toward his house.[5]  Plaintiff did not complain to Chesnut of any injuries,[6] and Chesnut did not get Plaintiff's name.  Plaintiff asserts that he suffered a fractured foot as a result of the incident.[7]  (Attach. 1 to A. Redding Decl. at 3, Mar. 17, 2008, A. Redding Statement, Sept. 28, 2004.)

It is undisputed that Defendant Burns, Macon's Chief of Police, and Defendant Ellis, Macon's mayor, were not on the scene or personally involved in the incident.

### DISCUSSION

**I. Plaintiff's § 1983 Claims**

To make a case under § 1983, Plaintiff must prove that Defendants, acting under color of state law, deprived Plaintiff of a right, privilege, or immunity secured by the Constitution or a federal law.  *See* 42 U.S.C. § 1983.  It is undisputed that Chesnut acted under color of state law when he stopped Plaintiff on September 22, 2004.  Plaintiff contends that Chesnut violated Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure and from the use of excessive force.

---

[5] According to Defendants, Plaintiff left the scene on his bicycle. According to Plaintiff, he walked.

[6] Plaintiff was whimpering when he left the scene. (J. Thomas Aff. ¶ 8; K. Thomas Aff. ¶ 7.)

[7] Plaintiff did not produce any medical records or medical testimony in support of his claim that Chesnut fractured his foot, but Defendants do not appear to dispute for purposes of these Motions that Plaintiff's foot was fractured.

6

Plaintiff does not specify whether his § 1983 claims against Defendants are individual capacity claims or official capacity claims. To the extent that Plaintiff makes official capacity claims against Defendants, those claims are considered claims against Macon ("Macon"). *See Smith v. Allen*, 502 F.3d 1255, 1272-73 (11th Cir. 2007) (official capacity suit is another way of pleading an action against the entity of which an officer is an agent). Each type of claim is addressed in turn below.

A.  <u>Individual Capacity § 1983 Claims Against Chesnut</u>

Plaintiff contends that Chesnut did not have a valid reason for stopping Plaintiff on September 22, 2004 and that Chesnut used excessive force when he stopped Plaintiff. Chesnut argues that he is entitled to qualified immunity as to Plaintiff's § 1983 claims against him in his individual capacity.

Qualified immunity shields public officers acting within the scope of their discretionary authority from liability so long as their acts do not violate clearly established law. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.

7

2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

To receive qualified immunity, an officer must show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194 (internal quotation marks omitted). Here, Plaintiff does not appear to dispute that Chesnut was acting within his discretionary authority during the events giving rise to this action. Therefore, Plaintiff must meet his burden to show that qualified immunity is not appropriate. *See id.* Plaintiff must first show that there is a genuine issue of material fact that Chesnut's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). If Plaintiff does not make this showing, there is no need for further inquiry. *See Lee*, 284 F.3d at 1194. If the facts viewed in the light most favorable to Plaintiff *do* establish the violation of a constitutional right, the Court must then determine whether the right was clearly established at the time of Chesnut's conduct. *See Saucier*, 533 U.S. at 201. A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope*, 536 U.S. at 739 (internal quotation marks omitted); *accord Saucier*, 533 U.S. at 202. The unlawfulness of the action must be apparent in light of pre-existing law, but the very action in question need not have been previously held unlawful. *Hope*, 536 U.S. at 739.

Plaintiff contends that Chesnut violated his right to be free from unreasonable seizures because Chesnut stopped Plaintiff without probable cause. The Fourth Amendment generally prohibits law enforcement officers from making a seizure without probable cause. However, a law enforcement officer may "'conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Jackson v. Sauls*, 206 F.3d 1156, 1165 & n.12 (11th Cir. 2000) (quoting *Ill. v. Wardlow*, 528 U.S. 119 (2000)). Reasonable suspicion must be based on objective facts, and it requires "'more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006) (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)).

It is undisputed that Chesnut's stop of Plaintiff was a "seizure" within the meaning of the Fourth Amendment. *See Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (observing that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied") (emphasis omitted). Chesnut was allowed to stop Plaintiff if, "from the collective knowledge of the officers involved in the stop" he "had an objectively reasonable suspicion that [Plaintiff] had engaged, or was about to engage, in a crime[.]" *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) (internal citations and quotation marks omitted). To have reasonable suspicion, an officer need not "catch

9

the suspect in a crime"—a "reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *Id.* (internal quotation marks omitted).

Chesnut asserts a qualified immunity defense, so "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson*, 206 F.3d at 1166. Arguable reasonable suspicion would exist in this case if a reasonable officer in the same circumstances and possessing the same information as Chesnut could have believed that reasonable suspicion existed to stop Plaintiff. *See Lee*, 284 F.3d at 1195 (defining arguable probable cause). Plaintiff contends that he was innocently walking or riding his bicycle through his neighborhood and that Chesnut had no reason to stop him. However, Chesnut responded to a tip[8] that three black males were dealing drugs behind the house at 1503 Wellworth Avenue. When the officers went to 1503 Wellworth Avenue, they saw three black males standing near each other close to a fence. As soon as the police officers arrived at the scene, one of the men fled the scene, and Plaintiff, whom Chesnut observed in close proximity to the men within the fenced backyard, began moving away from the scene and then ignored Chesnut's attempts to get him to stop. Based on this, the

---

[8]Another officer, Officer Chapman, received the tip from a citizen who stopped Chapman in person and told him that three men were dealing drugs at 1503 Wellworth Avenue. The citizen also told Chapman that his parents lived in the area and that he was tired of seeing drug activity when he went to visit his parents. (Chesnut Oct. 14 Statement at 1-2.)

—

Court concludes that a reasonable officer in the same circumstances and possessing the same information as Chesnut could have believed that reasonable suspicion existed to stop Plaintiff.  *See United States v. Fields*, 178 F. App'x 890, 892 (11th Cir. 2006) (finding that *anonymous* tip of drug activity, along with suspect's presence at a house known for drug activity and suspect's evasive behavior was sufficient for a finding of reasonable suspicion).

Having found that Chesnut was permitted to stop Plaintiff, the Court must next determine whether Chesnut used excessive force during the stop.  This claim must be analyzed under the Fourth Amendment's objective reasonableness standard.  *Jackson*, 206 F.3d at 1169 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  The right to make an investigatory stop or arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.  The use of force must be judged on a case-by-case basis "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (internal quotation marks and citations omitted).

11

In determining whether the use of force was objectively reasonable, the courts consider a variety of factors, including: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (internal quotation marks omitted). The courts also consider "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing." *Id.* (alterations in original) (internal quotation marks omitted).

Here, Chesnut suspected that Plaintiff was involved in drug activity because Chesnut saw him standing close to two other individuals at a location where drug activity had been reported. After one of the other individuals took flight upon seeing the police officers, Chesnut ordered Plaintiff to stop and show his hands, but Plaintiff did not do so. Instead, Plaintiff continued to move away from 1503 Wellworth Avenue. Therefore, Chesnut could have reasonably believed that some force was warranted to stop Plaintiff. After Chesnut knocked Plaintiff to the ground, Plaintiff ignored Chesnut's repeated orders to "freeze" and "stay down" and was actively resisting Chesnut's efforts to stop him, so Chesnut could have reasonably believed that continued force—including using his foot to press on Plaintiff's foot and hold him down—was required to restrain

12

Plaintiff. Thus, even though the facts viewed in the light most favorable to Plaintiff establish that Plaintiff suffered a broken foot as a result of the force Chesnut used, the other factors weigh in favor of a finding that the force Chesnut used was not excessive in light of the circumstances. *See, e.g., Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th Cir. 1997) (finding that use of force resulting in a broken arm *after* suspect was secured and was offering no resistance was excessive but suggesting that the same use of force would not have been unreasonable had the suspect been actively resisting arrest when the force was applied); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (finding that officer did not violate clearly established law when he used a choke hold on an arrestee whom the officer believed was about to become violent).

Even if the Court were to find that Chesnut used excessive force to restrain Plaintiff, the Court cannot conclude it was sufficiently clear that a reasonable officer in Chesnut's place would understand that the use of force violated a constitutional right. Plaintiff has the burden of demonstrating that Chesnut—"at the pertinent time and given the specific circumstances of this case-had fair notice that [his] conduct would violate clear federal law." *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007). To meet this burden, Plaintiff may point to (1) earlier case law from the Supreme Court, Eleventh Circuit or Georgia Supreme Court that is "materially similar to the current case and therefore provided clear notice of the violation" or

13

(2) "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of [Chesnut's] conduct." *Id.* Plaintiff has not directed the Court to, and the Court has not found, any law that would have made it clear to a reasonable officer in Chesnut's situation that his conduct in restraining Plaintiff was unconstitutional.

For all of these reasons, the Court concludes that Chesnut is entitled to qualified immunity as to Plaintiff's § 1983 claims against him in his individual capacity, and he is entitled to summary judgment on that basis.

### B.   Plaintiff's § 1983 Claims Against Macon

For Plaintiff to state a § 1983 claim against Macon, he must show that he suffered a constitutional violation as a result of the City's unlawful "policy or custom." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1145 (11th Cir. 2007); *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Plaintiff contends that his injury was the result of improper training and supervision. To sustain that claim, Plaintiff must "bring forth some evidence of a pattern of improper training to sustain his claim, and he must show that [Macon] was aware of the deficiencies in the program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005); *see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("A failure to adequately train

municipal employees constitutes an actionable policy or custom for § 1983 purposes 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'" (alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989))).

Plaintiff has not pointed the Court to any policy or custom that had any connection to his injury. He has not brought forth any evidence of a pattern of improper training or supervision. Because Plaintiff has not introduced any evidence that a Macon custom or policy was a "moving force" behind his injury, Macon is entitled to summary judgment on Plaintiff's § 1983 claims.

### C.   Individual Capacity Claims Against Burns and Ellis

Plaintiff seeks to hold Burns and Ellis liable for the acts of Chesnut and for failure to train and supervise Chesnut. Burns and Ellis are entitled to qualified immunity if Plaintiff's evidence does not show that their conduct violated a clearly established constitutional right. *Saucier*, 533 U.S. at 201. Supervisory officials such as Burns and Ellis may not be held liable under § 1983 on the basis of respondeat superior or vicarious liability. *Danley v. Allen*, 540 F.3d 1298, 1314 (11th Cir. 2008). "'The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.'" *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)). Supervisory liability

15

under § 1983 occurs "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*  A causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* (internal quotation marks omitted).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A plaintiff can also establish a causal connection by showing that the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal quotation marks omitted).

   Here, Plaintiff has pointed to no evidence that either Burns or Ellis was personally involved in or witnessed the September 22, 2004 incident.  There is no evidence that they told Chesnut to knock Plaintiff to the ground and hold him there.  Plaintiff has pointed to no evidence of any pattern of widespread abuse sufficient to put Burns and Ellis on notice of a need to correct any alleged constitutional deprivations.  Plaintiff has pointed to no evidence that Burns or Ellis knew that Chesnut would act unlawfully but failed

16

to stop him from doing so. For these reasons, the Court finds that Plaintiff has not shown that there is a genuine issue of material fact that Burns or Ellis violated a constitutional right, and Burns and Ellis are therefore entitled to qualified immunity as to claims against them in their individual capacities. *See Saucier*, 533 U.S. at 201; *Lee*, 284 F.3d at 1194 (noting that there is no need for further inquiry if the plaintiff does not show a violation of a constitutional right). Accordingly, the Court grants Burns and Ellis's Motion for Summary Judgment as to Plaintiff's § 1983 claims against them in their individual capacities.

## II.  Americans With Disabilities Act Claims

In addition to his § 1983 claims, Plaintiff asserts an ADA claim against Defendants. In support of the ADA claim, Plaintiff appears to contend that Chesnut discriminated against Plaintiff because of his disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be . . . subjected to discrimination by [a public] entity." 42 U.S.C. § 12132. The Court assumes for purposes of this Order that Plaintiff is a qualified individual with a disability.

Plaintiff does not appear to dispute that Chesnut did not know or have reason to know that Plaintiff was developmentally disabled when Chesnut knocked Plaintiff to the ground and attempted to restrain him. For that reason, the Court cannot find that Chesnut discriminated against Plaintiff "by reason" of his disability. *See*

17

*Bircoll v. Miami-Dade* County, 480 F.3d 1072, 1085 (11th Cir. 2007) ("Title II prohibits discrimination by a public entity *by reason of* [the plaintiff's] disability.") (emphasis added); *cf. Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1186 (11th Cir. 2005) (noting, in the context of a Title I ADA employment case, that "a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability").  Therefore, Defendants are entitled to summary judgment on Plaintiff's ADA claims.[9]

## CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment (Docs. 20 & 21) are granted.

IT IS SO ORDERED, this 3rd day of November, 2008.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[9] Even if Plaintiff could show that Chesnut knew of Plaintiff's disability, Plaintiff would have to show that under the circumstances a "modification of police procedures" was reasonable before Chesnut stopped Plaintiff.  See *Bircoll*, 480 F.3d at 1085-86 (rejecting deaf motorist's ADA claim based upon officer's decision to deny the motorist, who could read lips but did not know sign language, an interpreter for DUI field sobriety tests).  Under the circumstances Chesnut faced, it is difficult to imagine what kind of police procedure modification should or could have been employed before Chesnut stopped Plaintiff.